UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**VERNA DIANNE DICKINSON and GREGORY DICKINSON**  **PLAINTIFFS**

**V.**  **CIVIL ACTION NO.1:06CV198 LTS-RHW**

**NATIONWIDE MUTUAL FIRE INSURANCE CO., ET AL.**  **DEFENDANTS**

## MEMORANDUM OPINION

The Court has before it four motions. The first is a motion [120] of Nationwide Mutual Fire Insurance Company and Nationwide Mutual Insurance Company (collectively, Nationwide) for summary judgment. For the reasons set out below, this motion will be granted in part and denied in part. The second is the motion [118] of Nationwide to limit certain evidence on the grounds of judicial estoppel. This motion concerns the plaintiffs' receipt of a homeowner's assistance grant through the Mississippi Development Authority (MDA). For the reasons set out below, this motion will also be granted in part and denied in part. Third is the motion [106] by Nationwide to establish the fact and amount of plaintiffs' recovery from the Audubon Insurance Company's (Audubon) wind damage policy the plaintiffs purchased through the Mississippi Windstorm Underwriting Association (the Wind Pool). This motion will be granted. Fourth is a motion [108] by the plaintiffs to exclude evidence concerning the settlement of their claim against Audubon. This motion will also be granted.

### Undisputed Facts and the Contentions of the Parties

On August 29, 2005, Plaintiffs were the owners of a home situated at 3 Mockingbird Lane, Gulfport, Mississippi. This residence was destroyed during Hurricane Katrina. A Nationwide homeowners policy covering the plaintiffs' property was in force at the time of the storm. The plaintiffs also had a separate policy of wind insurance issued by Audubon through the Wind Pool. The plaintiffs did not have flood insurance. Flood damage is an excluded peril under both the Nationwide and the Audubon policies. The parties dispute whether the destruction of the plaintiffs' property was caused by wind, flooding, or both.

Plaintiffs applied for and were awarded a $150,000 homeowner's assistance grant through the MDA. Nationwide is asking the Court to treat the grant payment as if it were a flood insurance recovery. Nationwide contends that this grant is the equivalent of a flood insurance payment, and that the acceptance of the grant should be considered a judicial admission by the plaintiffs that flooding caused at least $150,000 of the storm damage to the plaintiffs' dwelling.

This action originally included Audubon as a party defendant. The plaintiffs' claims against Audubon were settled, and Audubon has been dismissed from this proceeding. Plaintiffs have received $205,100 in benefits under their Audubon policy, and that policy is no longer at issue in this litigation. These are the facts that underlie Nationwide's [106] "Motion To Establish the Fact and Amount of Plaintiffs' Recovery From the Mississippi Windstorm Underwriters Association and Audubon Insurance" and the plaintiffs' [108] "Motion to Exclude Reference to Compromise of Litigated Claims."

Nationwide contends that because there was flood damage to the insured property the anti-concurrent causation provision of the policy applies and negates the plaintiffs' claim for wind damage. Nationwide also contends that its prior payments of $9,266.26 fully satisfies the plaintiffs' claim for additional living expenses. The plaintiffs have acknowledged that there were no additional buildings other than the dwelling on site, and there is no claim under the "Other Structures" coverage of this policy. Thus the remaining coverages at issue here are for wind damage to the dwelling and the personal property it contained at the time of the storm and for additional living expenses.

Nationwide asserts that the plaintiffs' claims of negligence, gross negligence, reckless disregard of the rights of the plaintiffs, and bad faith in adjusting the plaintiffs' claims are groundless and should be disposed of summarily. Thus, the central remaining issues in this case are: 1) whether plaintiffs are entitled to collect additional benefits under their Nationwide policy for wind damage to the insured property, and 2) whether the plaintiffs are entitled to any additional relief for their other claims against Nationwide (negligence, gross negligence, reckless disregard of their rights, and bad faith).

**The Terms of the Nationwide Policy and the Issue of Coverage for Wind Damage**

Nationwide's homeowners policy number 63 23 HO 051 738 provides coverage limits of $343,400 (Dwelling); $34,340 (Other Structures); $188,870 (Personal Property); and $68,680 (Loss of Use). The policy also includes inflation protection. The Nationwide policy insures the dwelling and other structures against "accidental direct physical loss" (under Coverage A and Coverage B), and the policy insures personal property against damage caused by certain enumerated perils. One of the enumerated perils is "windstorm and hail." Water damage, including flooding, is an excluded peril.

In addition to the policy language listing windstorm as an enumerated peril, this Nationwide policy has two endorsements relating to windstorm damage that are in direct conflict. One of the endorsements excludes coverage for damage caused by windstorm or hail, and the other grants that coverage. Nationwide asserts that the endorsement granting coverage, the "Hurricane Coverage and Deductible Provision Endorsement," was attached to the plaintiffs' policy by mistake. Nationwide contends that the endorsement excluding windstorm coverage, the "Windstorm and Hail

Exclusion" endorsement, bars the plaintiffs' claims. (Nationwide Answer, Twenty-Fifth Defense)

The endorsement excluding coverage for windstorm damage provides:

### *Windstorm and Hail Exclusion*

*Please attach this important addition to your policy.*

1. *We do not insure for loss caused directly or indirectly by the perils of windstorm or hail; and*
2. *Windstorm or hail loss is excluded regardless of any cause or event contributing concurrently or in any sequence to the loss.*
   *We will cover direct loss by fire or explosion resulting from windstorm or hail damage.*
   *This exclusion does not apply to Coverage D - Loss of Use*
   *All other policy provisions apply.*

The conflicting endorsement granting coverage for windstorm damage provides:

### *Hurricane Coverage and Deductible Provision Endorsement*
*Please attach this important addition to your policy.*

*For the premium charged, the policy is amended as follows:*

**ADDITIONAL DEFINITIONS APPLICABLE**

*For purposes of this endorsement only:*

1. *"Hurricane" means a storm system declared to be a hurricane by the National Hurricane Center of the National Weather Service. The duration of the hurricane includes the following time period in the state or commonwealth in which the residence is located:*

   (a) *Beginning at the time a hurricane watch or hurricane warning is issued in any part of the state of commonwealth by the National Hurricane Center; and*

   (b) *Continuing for the time period during which the hurricane exists anywhere in the state or commonwealth; and*

   (c) *Ending 72 hours following termination of the last hurricane watch or hurricane warning for any part of the state or commonwealth by the National Hurricane Center.*

> 2. *"Windstorm" means wind, wind gust, hail, rain, tornadoes or cyclones caused by or resulting from a hurricane.*
>
> ***HURRICANE COVERAGE***
>
> *Coverage under this policy includes loss or damage caused by the peril of windstorm during a hurricane. It includes damage to a building's interior or property inside a building, caused directly by rain, snow, sleet, hail, sand or dust if direct force of the windstorm first damages the building causing an opening through which the above enters and causes damage.*
>
> *Hurricane coverage does not include loss caused by flooding, including but not limited to flooding resulting from high tides or storm surge.*
>
> *All other policy provisions apply.*

The inclusion of these two conflicting endorsements in the plaintiffs' homeowners policy creates an ambiguity which must be resolved in favor of the insured. As a result, the Nationwide policy provides windstorm coverage, i.e. hurricane coverage as defined and provided for in the "Hurricane Coverage and Deductible Provision Endorsement," even though this endorsement may have been added to the plaintiffs' policy as a result of an error on the part of Nationwide. Nationwide alone was responsible for the drafting of its insurance policy and the confection of its endorsements, and the inclusion of this endorsement makes it part of the policy and an enforceable provision of the insurance contract. *State Farm Mut. Auto. Ins. Co. v. Scitzs*, 394 So.2d 1371 (Miss.1981); *Progressive Gulf Ins. Co. v. We Care Day Care Center*, 953 So.2d 250 (Miss.App. 2006).

### Nationwide's Payments under this Homeowners Policy and the Anti-Concurrent Causation Provision of the Policy

The plaintiffs reported the destruction of their insured property to Nationwide on August 31, 2005, and made a claim under their Nationwide homeowners policy. From the time Nationwide's claims adjustor Keith Stillwell made his first inspection of the insured property on September 15, 2005, there has been an on-going dispute whether the damage to the plaintiffs' property was caused by wind or by flooding and the extent of the damage caused by these separate perils.

On November 21, 2005, Nationwide dispatched an engineer from Cain & Associates (Cain) to assess the extent and cause of the damage to the insured property. This engineer was of the opinion that most of the damage to the insured property was caused by the forces of storm surge flooding, a peril that the parties agree was not covered under the Nationwide policy. The Cain engineer estimated that the storm surge flooding reached a depth of approximately twenty-three feet at the

plaintiffs' property, and that this was sufficient to inundate the first floor of the plaintiffs' dwelling. Plaintiffs question the validity of the engineer's conclusion and his estimates concerning the level of the flooding at the site.

Nationwide has made three payments to the plaintiffs:

1. An initial payment of $10,675.50 for damage to the plaintiffs' roof ($7,175.50), food spoilage ($500), debris and/or live tree removal ($500), and additional living expenses ($2,500);
2. A second payment of $6,766.26 for additional living expenses made on February 10, 2006; and
3. A third payment of $98,979.07 ($45,778.76 for damage to the dwelling; $53,200.31 for personal property) made on August 10, 2007.

When the initial payment was made, Nationwide reserved its right to deny coverage for flood damage, and Nationwide also reserved its right to deny coverage for wind damage based on the anti-concurrent causation provision of the policy. That provision states:

*Property Exclusions*
*(Section 1)*
*1.    We do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss.*

*                         *     *     **

*(b)    Water or damage caused by water-borne material. Loss resulting from water or water-borne material damage described below is not covered even if other perils contributed, directly or indirectly to cause the loss. Water and water-borne materials damage means:*
*(1)    flood, surface water, waves, tidal waves, overflow of a body of water, spray from these whether or not driven by wind;*
*                         *     *     **

*2.    We do not cover loss to any property resulting directly or indirectly from the following if another excluded peril contributes to the loss:*

*                         *     *     **

*(C) Weather conditions, if contributing in any way with an exclusion listed in paragraph 1. Of this Section.*

## The MDA Grant

The Mississippi Development Authority offered homeowners assistance grants up to a maximum of $150,000 to individuals who resided in Hancock, Harrison, or Jackson County on August 29, 2005. The grant was offered for individuals who sustained flood damage to their primary residence if the residence was situated outside the FEMA-designated 100-year flood zone (or elevated above the base flood zone level) and if the residence was covered by homeowners (or wind) insurance at the time of the storm.

The amount of the grant is calculated under a formula that takes into consideration the pre-storm insured value of the residence, the extent of the damage to the property (including both wind damage and flood damage) expressed as a percentage of the pre-storm insured value, less insurance proceeds the homeowners have collected (including wind, homeowners, and flood insurance) and less other specified government benefits (other FEMA grants and SBA loans) the homeowners have collected. The grant does not require a segregation of wind damage and flood damage, and beyond the threshold requirement that the residence must have sustained flood damage as a result of the storm, the grant makes no distinction between these two types of storm damage. Thus the amount of the grant is not based on the extent of the flood damage to the grantee's property. The grant is based on the total damage to the grantee's property from the forces of both wind and water generated by the storm.

Plaintiffs applied for and obtained an MDA homeowners assistance grant of $150,000. The plaintiffs received the maximum allowable grant ($150,000) because under the grant formula the pre-storm insured value of the plaintiffs' property, multiplied by the percentage of that value that represented storm damage, less the insurance proceeds the plaintiffs had then collected, exceeded this maximum grant limit.

Nationwide asserts that the application for this flood damage grant and the receipt of the grant itself is an admission by the plaintiffs that their dwelling sustained flood damage and that the destruction of the property was not *solely* caused by the peril of windstorm. To this extent, Nationwide's point is well taken. I agree with Nationwide's contention that the plaintiffs' grant application and the receipt of the grant itself constitutes an admission that some of the damage to the plaintiffs home was caused by flooding.

## The Effect of the Anti-Concurrent Cause Provision

Nationwide has taken the position--for the first time in any litigation concerning damage sustained in Hurricane Katrina–that the anti-concurrent cause provision in its homeowners policy prevents any recovery for wind damage when the insured property also sustains substantial flood damage.

Based on the passage concerning the anti-concurrent cause provision in the Fifth Circuit's opinion in *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 4149 (5th Cir. 2007), Nationwide offers a very broad interpretation of this policy language, asserting that any insured property that sustains hurricane damage from the forces of both wind and water falls within this policy exclusion.  I am of the opinion that Nationwide's interpretation is far too broad.  It appears to me that Nationwide is attempting to expand the analysis of the *Leonard* panel beyond any reasonable limit and beyond the holding of that case.

In *Leonard*, the Court of Appeals was dealing with two distinct items of insured property that were damaged in the storm:  1) exterior damage to the roof and a window caused by wind and wind-driven debris, and 2) interior damage to floors, carpets, and walls caused by rising water.  The Court of Appeals determined that these two types of damage were the result of two different perils, the covered peril of wind, and the excluded peril of flooding.  In this fact situation the *Leonard* panel upheld the anti-concurrent cause provision of the Nationwide policy (finding that the provision was not ambiguous and was therefore enforceable) and also sustained the ruling that the Leonards were entitled to a recovery for the damage caused by the hurricane winds and wind-driven debris.  The Court of Appeals did not adopt the interpretation Nationwide is urging this Court to reach on the facts in this record.

The meticulous analysis by David Rossmiller concerning the history, purpose, and meaning of the anti-concurrent cause provision, published at *New Appleman on Insurance: Critical Issues in Insurance Law*, makes it clear that an anti-concurrent cause provision has no application in a situation (such as Hurricane Katrina) where two distinct forces (wind and water) act separately and sequentially to cause different damage to insured property.  Each force may cause damage to different parts or items of the insured property, as occurred in the Leonard case, or the two forces may cause damage to the same item of insured property at different points in time.  But the two forces, i.e. wind and water, remain separate and not concurrent causes of this damage.  In either case, the damage caused by wind is covered under the policy while the damage caused by water is not.  Water damage is the excluded "loss" referred to in the anti-concurrent cause provision of the Nationwide policy.

Thus, the damage done by wind and wind-driven debris during Hurricane Katrina is a loss that is covered by the Nationwide homeowners policy, and any additional damage done by the rising waters incident to the storm is not a covered loss.  In this situation, the anti-concurrent cause provision is not applicable and does not come into play because each force causes its own separate damage independent of the damage caused by the other even when the same item of property is damaged by both forces acting separately and sequentially.  Wind and water are separate and not concurrent causes of the damage to the insured property.

I also find that Nationwide's reliance on its "weather exclusion" is invalid in light of the endorsement specifically granting hurricane coverage.  These provisions are, in

my opinion, inconsistent, and the elimination of coverage for losses in which "weather" plays a part is contrary to any reasonable interpretation of this policy or any policy that covers the peril of windstorm.

Thus, Nationwide will not be liable for any damage the insured property sustained because of storm surge flooding, because the peril of flooding is excluded under the homeowners policy. Nationwide is only liable for the damage caused by the covered peril of windstorm, as defined in the endorsement granting that coverage. What remains to be decided, based upon the evidence presented by the parties– evidence that is certain to be conflicting–is whether, after the plaintiffs' recovery from their Audubon policy is taken into consideration, Nationwide has fully and fairly compensated the plaintiffs for all the windstorm damage the insured property sustained during Hurricane Katrina. This is not an issue that is appropriate for summary resolution.

### The Effect of the Plaintiffs Having Applied for and Accepted the Mississippi Development Authority Grant

Nationwide's obligations under its homeowners policy are not offset or reduced by the amount of the MDA grant, nor does the grant reduce the plaintiffs' total loss in the same way as a flood insurance recovery. The purpose of the grant is to provide financial assistance to homeowners who resided outside the flood plain and yet received flood damage to their home. The operation of this grant program is described in the MDA Homeowner Assistance Program Partial Action Plan. (Exhibit 2 to Nationwide's Rebuttal Brief in Support of Motion for Summary Judgment [139])

The original amount of the grant is calculated according to a formula that takes into consideration the pre-storm insured value of the structure, the percentage of this value that represents storm damage of all kinds (both wind and water damage), insurance benefits the applicant has already collected (homeowners, wind, and flood insurance), and other grants and loans that have been awarded to the applicant. The formula does not attempt to segregate wind damage from flood damage, and the grant is calculated on the basis of the total storm damage from all causes for which the owner has not received insurance compensation or other government assistance.

In order to qualify for the MDA grant, a homeowner must certify that his property sustained flood damage, but the amount of the grant is not dependent on the extent of this flood damage. The grant formula takes into consideration both wind damage and flood damage, just as it takes into consideration the collection of all insurance benefits whether from wind coverage, homeowners coverage, or flood coverage. Thus, by applying for and receiving an MDA grant the homeowner makes a judicial admission that the insured property has sustained some amount of flood damage, but the receipt of the grant does not constitute an admission or a representation concerning the extent of this flood damage. Unlike the receipt of flood insurance benefits, which are paid and accepted as compensation for damage from the specific peril of flooding, the grant

covers both flood damage and wind damage and thus is not paid as compensation for damage from the specific peril of flooding.

The grant program includes a subrogation agreement covering the grantee's collection of additional insurance benefits after receiving the grant. This agreement requires that any subsequent insurance payment for damage to the grantee's structure be sent to the MDA so that the grant formula can be recalculated to take the later insurance payment into account. The original grant is recalculated as if this later insurance payment had been made prior to the grant. If this recalculation has the effect of reducing the amount of the original grant, MDA keeps the portion of the insurance recovery necessary to correct this overpayment and the balance of the insurance recovery, if any, then belongs to the grantees.

The subrogation agreement and the recalculation of the grant prevent the collection of insurance proceeds after the grant has been awarded from resulting in a double recovery. Once the grant amount is recalculated, these insurance proceeds are first applied to reduce the amount of the original grant to the amount that would have been originally awarded had the subsequently-collected insurance benefits been included in the original grant formula. Any remaining balance of these subsequently-collected insurance proceeds would then belong to the grantee.

In the MDA grant application, the plaintiffs certified that their home sustained flood damage. The plaintiffs would not have qualified for the grant had there been no flood damage to their home. A damage assessor named Ronnie Kurz (Kurz) concluded that "the house was washed away by high flood waters, leaving only the slab," and "this house suffered about 15ft of flood water washing the home away leaving only the slab behind." Kurz's statements are hearsay, and his opinion is not conclusive on the question how much damage was caused by wind versus water, but it is obvious that the plaintiffs' home did sustain some flood damage, and the plaintiffs' acceptance of the MDA grant is an admission that this is so.

### Calculation of the Plaintiffs' Uncompensated Losses

There is no evidence in the record that conclusively establishes the pre-storm value of the insured dwelling. The "Homeowners Assistance Grant To-Do List" indicates that the dwelling has a pre-storm insurable value of $377,740. I cannot determine the identity of the individual who made this estimate. I infer that this figure does not include the value of the contents of the plaintiffs' dwelling because the grant program does not purport to take the value of personal property into consideration.

MDA furnished the plaintiffs a copy of the document that reflects this estimate, and Nationwide asserts that because the plaintiffs did not contest this figure, they should not be allowed to present evidence that their home has a higher pre-storm value. While this estimate may be evidence that is relevant to the issue of the pre-storm value of the insured property, I do not believe it is conclusive on this issue of fact.

Nor do I believe that the plaintiffs' having accepted the MDA grant that contains this estimate amounts to an admission or an affirmation that this value is accurate.  Insured value may be different from actual cash value or replacement cost, and it is these values, rather than the insured value, that are relevant in calculating benefits under the insurance coverage at issue.

The pre-storm value of the insured dwelling (and its contents) represents the maximum recovery the plaintiffs may obtain from all applicable insurance coverages under the indemnity principle.  Unless the insurance policy under consideration provides coverage for replacement cost, inflation, or other factors which may cause the insurance benefits to exceed the pre-storm value of the building, the pre-storm value of the insured property provides a ceiling on the amount of the plaintiffs' total potential insurance recovery.

The current remaining Nationwide coverage for the insured dwelling is $290,446 (dwelling limits of $343,400 less benefits of $52,954 paid for windstorm damage to the dwelling) and the remaining Nationwide coverage for the contents of the insured dwelling is $135,670 (personal property limits of $188,870 less benefits of $53,200.31).  The plaintiffs' maximum recovery in this action under their Nationwide homeowners policy will be the lesser of: a) the remaining Nationwide coverage; or b)  the amount of uncompensated wind damage to the insured property that is established by the evidence (taking into consideration both the payments made by Nationwide and the payments made by Audubon).

## Other Structures Coverage, Additional Living Expenses, Extra-Contractual Damage Claims and the Proceeds of the Audubon Policy

Because the plaintiffs had no other buildings on their property they are entitled to no compensation under the "Other Structures" coverage in the homeowners policy.  Plaintiffs have conceded this in their response to Nationwide's motion for summary judgment.

The question whether benefits are due for additional living expense is a matter of proof whether plaintiffs have incurred additional living expenses for which they have not yet been compensated.  The record before me does not contain sufficient evidence to support a finding that the plaintiffs have not incurred any uncompensated additional living expenses nor that the expenses the plaintiffs have incurred are not covered under the Nationwide policy.

The validity of the plaintiffs' claims for extra-contractual damages is not appropriate for summary adjudication at this point, and until the issue of actual damages has been tried, no evidence on the issue of punitive damages will be admitted.  The question whether Nationwide met its duty of reasonable care concerning the investigation and payment of the plaintiffs' claim is not so clear on this record as to justify the disposition of these claims as a matter of law.

  With respect to the Audubon insurance recovery, I believe it should be accorded the same treatment, for the purpose of the trial of this action, as any other insurance recovery.  I will therefore follow my ordinary practice of excluding evidence concerning the plaintiffs' settlement with the other insurer (in most cases a flood insurer, but in this case Audubon, a wind insurer); asking the jury, through an interrogatory formulated with the input from counsel, to find the total amount of wind damage to the insured property; and then reducing the jury's total wind damage figure by the amount of the previous recovery under the Audubon policy.

  For these reasons, I will grant Nationwide's motion [120] for summary judgment as to the coverage for additional buildings, and I will deny the remainder of this motion.  I will grant Nationwide's motion [118] for judicial estoppel to the extent that the plaintiffs' application for the MDA grant constitutes an admission that there was some amount of flood damage to the plaintiffs' home, and I will deny the remainder of this motion.  Both Nationwide's motion [106] to establish the fact and amount of the Audubon Insurance Company's payment of wind insurance benefits and the plaintiffs' motion [108] to exclude evidence concerning the Audubon settlement will be granted.  An appropriate order will be entered.

  **DECIDED** this 4th day of April, 2008.

            s/ L. T. Senter, Jr.
            L. T. SENTER, JR.
            SENIOR JUDGE