**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**VERNA DIANNE DICKINSON and GREGORY DICKINSON           PLAINTIFFS**

**V.                                        CIVIL ACTION NO.1:06CV198 LTS-RHW**

**NATIONWIDE MUTUAL FIRE INSURANCE CO., ET AL.           DEFENDANTS**

## OPINION AND ORDER ON MOTIONS TO CLARIFY AND RECONSIDER THE MEMORANDUM OPINION ENTERED APRIL 4, 2008

The Court has before it the motion [147] of the plaintiffs to clarify and the motion [148] of the defendants Nationwide Mutual Fire Insurance Co. and Nationwide Mutual Insurance Company (Nationwide) to reconsider the findings expressed in the Memorandum Opinion entered on April 4, 2008.  Alternatively, Nationwide asks that I certify this matter as appropriate for an interlocutory appeal under 28 U.S.C. §1292.  For the reasons set out below, the motion [147] to clarify will be granted, and the motion [148] for reconsideration and for leave to seek an interlocutory appeal will be denied.

### The Motion for Clarification

Plaintiffs express apprehension that the Court's opinion will limit their recovery of benefits under their Nationwide homeowners policy to the dollar amounts set out on the declaration page.  This is not the case.  If the facts established in support of the plaintiffs' claim are sufficient to implicate additional coverage allowed for in the policy as inflation protection or replacement cost coverage, the dollar limits shown on the declarations page will be increased in accordance with the terms of the policy and the facts established at trial.  If the facts are not sufficient to support an enhanced recovery under these policy provisions, the dollar amount of coverage shown on the declarations page will control and limit the plaintiffs' contract damages.  The proper rate of inflation and the date that inflation protection benefits are to be reckoned will be decided by the Court as a matter of contract interpretation.

### The Motion for Reconsideration

Nationwide has moved the Court to reconsider its interpretation of the anti-concurrent cause (ACC) provision of its homeowners policy.  The exclusion at issue provides:

> *Property Exclusions*
> a.   *We do not cover loss to any property resulting directly or indirectly from any of the following.  Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss.*

The exclusion for water damage is defined and listed among the exclusions that follow this provision. Throughout this opinion I will refer to this exclusion as the "flood exclusion." While there are other exclusions listed, only the flood exclusion is at issue in this case. The flood exclusion applies to the peril of "water or damage caused by water-borne material," meaning "flood, surface water, waves, tidal waves, overflow of a body of water, spray from these whether driven by wind or not." (Policy Exclusion (b)(1)).

Nationwide contends that the ACC provision precludes recovery for wind damage to any item of insured property that was later damaged by storm surge flooding. Nationwide contends that because wind damage preceded the damage from storm surge flooding, and therefore occurred in a sequence of events, the "in any sequence" language in the ACC invalidates the plaintiffs' claim for wind damage. In other words, Nationwide takes the position that the ACC policy provision applies to exclude coverage for any wind damage that preceded damage from the excluded peril of flooding. I do not believe this is a reasonable interpretation of this provision.

I will begin my analysis by looking to the policy provision itself to identify the type of loss (or damage) to which it refers. The provision refers to the type of loss (or damage) it is intended to embrace in three separate places. The exclusion provides (emphasis mine):

> *Property Exclusions*
> a. *We do not cover **loss** to any property resulting directly or indirectly from any of the following.  **Such a loss** is excluded even if another peril or event contributed concurrently or in any sequence to cause **the loss**.*

In my opinion, the key to understanding this provision lies in its last two words: "the loss." These last two words echo, and also define the two other descriptive terms "loss" and "such a loss." In this provision "loss," "such a loss," and "the loss" all refer to "any loss to [the insured] property resulting directly or indirectly from [the excluded peril of flooding]." "The loss" the last two words of this provision refers to must be a loss caused, at least in part, by an excluded peril, and in this instance the excluded peril is flooding. It follows that any loss in which the excluded peril of flooding plays no part is outside "the loss" to which the ACC applies.

If the specific peril of flooding is incorporated into the ACC provision it would read:

> Property Exclusions
> a.   We do not cover loss to any property resulting directly or indirectly from [the peril of flooding].  Such a loss [from the peril of flooding] is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss [from the peril of flooding].

It is readily apparent to me that the ACC provision applies only to damage to a specific item of insured property that is attributable to both the excluded peril of flooding and also another cause (in this instance wind). Any loss in which the excluded peril of flooding plays no part, i.e. wind damage that occurs in the absence of this type of excluded water damage, does not fall within the ACC provision because it is not part of "the loss" the ACC provision refers to.  "The loss" the ACC provision refers to is "any loss resulting directly or indirectly from [the peril of flooding]," and this provision cannot be fairly read to exclude any loss which occurs in the absence of the excluded peril of flooding.

The ACC clause operates to preserve the listed exclusions in the event some other factor operates with the excluded peril to cause a loss.  The ACC is not operative and has no application to damage that is in no way caused (directly or indirectly) by an excluded peril.

In every litigated case tried to date, the one area of general agreement among all the weather experts who have testified is this: the strongest hurricane winds preceded the storm surge flooding.  It is clear to me that storm surge flooding cannot be a cause (directly or indirectly) of damage that occurs before the storm surge flooding reaches the insured property, i.e. before the excluded peril of flooding occurs.  In my opinion, in these circumstances, wind and storm surge flooding are separate causes of separate damage to the insured property, and the separate wind damage does not contribute, sequentially or concurrently, to "the loss" caused ("directly or indirectly") by storm surge flooding.  Thus the wind damage is outside the ACC and is a covered loss while the subsequent flood damage is not.

Nationwide urges me to adopt the broadest possible interpretation of this policy provision and hold that wind damage done before the arrival of the storm surge flooding is not a covered loss.  In my opinion this provision cannot be reasonably read in this way.  The reading Nationwide is urging the Court to accept would have the effect of including separate wind damage, damage that is not caused in any way (directly or indirectly) by the excluded peril of flooding, within the ACC phrases "loss," "such loss," and "the loss."  This would expand the scope of this policy provision beyond the policy language Nationwide employed.  Ordinary rules of policy interpretation require that exclusions be strictly construed rather than being given an expansive reading. *See*: *Mississippi Farm Bureau Mut. Ins. Co. v. Jones*, 754 So.2d 1203 (Miss. 2000); *Progressive Gulf Ins. Co. v. We Care Day Care Center*, 953 So.2d 250 (Miss.App. 2006).

Wind damage that precedes the arrival of the storm surge and damage that happens after the storm surge arrives are separate losses from separate causes, and not concurrent causes or sequential causes of the same loss ("the loss" referred to by the provision in question). I am satisfied that my interpretation of the ACC provision of the Nationwide policy, expressed in the Memorandum Opinion of April 4, 2008, is sound and consistent with Mississippi law, and I do not believe that my ruling is in any way inconsistent with the holding in the *Leonard* opinion concerning this policy provision.

The distinction the Court is now being called upon to make was not before the Fifth Circuit in *Leonard*.

The ACC provision does not purport to apply to losses caused separately by two forces (wind and water) acting sequentially but separately. The provision only applies to "the loss" it defines as a loss caused, directly or indirectly, by an excluded peril. Damage to an item of insured property that occurs without the effect of storm surge flooding playing any part is not within "the loss" defined by this provision. Hurricane winds that reached the insured property before the storm surge flooding occurred may have caused damage. Storm surge flooding may then have done new and different damage to the insured property when it arrived. To the extent the wind caused or contributed to this new storm surge flooding damage, the wind is then a concurrent cause within the meaning of the ACC provision, and the new damage from storm surge flooding is not covered by the Nationwide policy. This new and additional damage caused by the rising water of the storm surge is not a covered loss, and it does not become a covered loss merely because the wind (a covered peril) is driving the water on shore. The damage done by the wind-driven storm surge flooding is within the scope of "the loss" defined by the ACC provision, but the separate wind damage that precedes the storm surge flooding is not part of "the loss" to which that provision refers.

Wind damage that precedes flood damage happens in a sequence of events, but the wind damage is not caused, directly or indirectly, by storm surge flooding, and the damage done by the wind is therefore not a part of "the loss" the ACC refers to. Since the ACC does not apply to this separate wind damage, the wind damage is a covered loss. The insurance benefits that apply to this covered loss vest in the insured at the time the loss occurs. *See*: *Pitts v. American Security Life Insurance Co.*, 931 F.2d 351 (5th Cir. 1991); *Bland v. Bland*, 629 So.2d 582 (Miss.1993). Wind and flood were separate and not concurrent causes of damage to the insured property, and the wind damage that precedes the storm surge does not contribute, sequentially or concurrently, to "the [excluded] loss" caused by storm surge flooding and referred to by the ACC.

F.R.Civ.P. 59 allows a motion to permit a Court to review its decisions and to alter or amend them for manifest error, but it is not a vehicle for a litigant to ask the Court to reconsider adverse decisions it is simply unwilling to accept. Nationwide has submitted no new evidence and no new arguments in support of its motion to reconsider. Nationwide has requested an interlocutory appeal of this matter under 28 U.S.C. §1292, but I do not find that this case meets the criteria for an interlocutory appeal in that an interlocutory appeal is not likely to advance the ultimate termination of this litigation.

Accordingly it is hereby

**ORDERED**

That the plaintiffs' motion [147] to clarify the Memorandum Opinion entered on April 4, 2008, is **GRANTED**, and

That Nationwide's motion [148] to reconsider the Memorandum Opinion entered on April 4, 2008, is **DENIED**; and Nationwide's alternative request that this matter be certified for interlocutory appeal is also **DENIED.**

**DECIDED** this 25th day of April, 2008.

s/ L. T. Senter, Jr.
L. T. SENTER, JR.
SENIOR JUDGE