UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**VERNA DIANNE DICKINSON and GREGORY DICKINSON**            **PLAINTIFFS**

**V.**                                       **CIVIL ACTION NO.1:06CV198 LTS-RHW**

**NATIONWIDE MUTUAL FIRE INSURANCE CO., ET AL.**            **DEFENDANTS**

### ORDER OVERRULING MOTION *IN LIMINE* TO EXCLUDE EVIDENCE THAT WAS NOT PART OF NATIONWIDE'S CLAIMS FILE (INCLUDING THE TESTIMONY OF EXPERTS RETAINED FOR TRIAL)

Plaintiffs have moved the court *in limine* [167] to exclude from evidence any information that was not a part of the Nationwide claims file and that was not used by Nationwide to make its determination whether to honor the plaintiffs' claim in whole or in part. Plaintiffs assert that any other evidence, including the testimony and reports of the experts Nationwide engaged to testify at trial, should be entirely excluded. I do not agree.

Plaintiffs have asserted that Nationwide should be limited to the introduction of evidence it had in hand and relied upon in denying the plaintiffs' claim. Plaintiffs assert that Nationwide made its final decision to deny their claim on November 10, 2006, and any information or evidence Nationwide acquired after that date should be excluded. In my view, the question of when Nationwide's investigation ended and when its decision not to pay the claim became final is an issue of fact. The record indicates that Nationwide made a substantial payment of policy benefits on August 10, 2007, and I do not know what the evidence will be concerning the reason Nationwide made this last payment. I think it is reasonable to infer, at this point, that Nationwide's investigation of the plaintiffs' claim lasted at least until the date of this final payment.

The record indicates that Nationwide made three payments under the plaintiffs' policy, the last payment of $98,979.07 having been made on August 10, 2007. In making these payments Nationwide has reserved its right to deny coverage for wind damage based on the anti-concurrent causation provision of its policy. I cannot determine, at this point, whether there were other reasons for the actions Nationwide has taken with respect to the plaintiffs' claim, and I will not speculate about this, but I do not believe the record supports the plaintiffs' contention that Nationwide should be limited to the evidence it had in hand on November 10, 2006. The evidence in this record suggests to me that Nationwide continued to investigate the merits of the plaintiffs' claim until at least the date of its last payment on August 10, 2007.

Whether the evidence is Keith Stillwell's (Stillwell) first-hand observations of the plaintiffs' property, Cain and Associates Engineers' (Cain) evaluation, information obtained from Haag Engineering Training materials, inspections conducted on other properties, calculations concerning wind pressure, information from meteorological reports, or the conclusions reached by representatives of Kevin Kennedy Associates, Inc., Nationwide has a right and a duty to take this evidence into consideration at every stage of the claims evaluation process, and Nationwide has a right to present any of this evidence that is relevant to the issue of liability at trial.

Plaintiffs contend that Nationwide should not be allowed to present meteorological evidence because there was no meteorological study done in connection with the plaintiffs' claim, but any meteorological study Nationwide obtained in connection with any claim could and should be considered part of its investigation because the hurricane was the cause of widespread damage that included the plaintiffs' home and many other properties Nationwide insured. I do not believe it is necessary or reasonable to establish an evidentiary requirement that an insurer commission a meteorological study for each of hundreds of properties that were damaged in a single weather event.

Plaintiffs rely heavily on *United American Ins. Co. v. Merrill*, 978 So.2d 613 (Miss.2007) (*Merrill*). *Merrill* involved the denial of coverage under a life insurance policy on the grounds that there was a material misrepresentation in the insured's application. United American Insurance Company (UA) wrote a denial letter stating that the plaintiff's claim was denied because the insured had been treated for congestive heart failure during the three years preceding his application for coverage. The insured answered "no" to the application question whether he had been treated for congestive heart failure in the last three years. This was a final decision by UA not to honor this life insurance claim.

The trial court allowed discovery of the insured's medical records for the five years preceding the submission of the application, and none of these medical records supported the determination on which the insurer relied, i.e. none of these medical records indicated that the insured was diagnosed or treated for congestive heart failure during the three years preceding his application for life insurance. An in-house UA physician gave his opinion that the insured had been treated for congestive heart failure during the relevant three-year period. This testimony was not supported by the medical records that were in the claims file at the time the claim was denied or by any other of the insured's medical records.

The *Merrill* Court held that only the records on which UA based its final denial were relevant to the issues in dispute. The discovery of the insured's medical records outside the three-year period preceding the insured's application was approved, and the trial court's exclusion of the insured's medical records outside this three-year period was affirmed.

There are some similarities and there are some substantial differences between the facts in dispute in *Merrill* and those that are at issue in the case at bar. Both involve denial of an insurance claim and both question whether the denial of the claim was done in good faith based on a reasonable and complete investigation of the facts surrounding the claim. *Merrill* involved a final denial based entirely on UA's determination that the insured had concealed his having been treated for congestive heart failure between 1993 and 1996, the date of the application. Before making this denial, UA was afforded ample time to conduct its investigation, and the information it gathered did not support its decision to deny the claim. The only issue UA raised as a defense was the insured's concealment of this condition, and the only relevant time frame was the three years preceding the application. Since UA made a final decision to deny the claim and wrote a letter stating its reason for denying the claim, the medical records UA had in hand at that point was the only information relevant to the issue of both liability (and other non-punitive damages) and good faith claims handling practices.

In the case at bar, Nationwide undertook an investigation of the plaintiffs' claims a short time after the storm. The investigation began with adjustor Stillwell's visual inspection on September 15, 2005, and continued through November 21, 2005, when Nationwide engaged Cain to evaluate the claim based on its engineering expertise. At some point Nationwide reached a conclusion that storm surge flooding (a risk its policy does not cover) and not wind (a risk its policy does cover) caused the damage to the plaintiffs' property. During this time, Nationwide was conducting many claims investigations for properties damaged by the storm. Evidence gathered by Nationwide during its entire investigation is relevant to the underlying issue in dispute, i.e. what force of nature caused damage to each item of insured property, and I believe Nationwide is entitled to present all of this evidence in defense of the merits of the plaintiffs' claim.

This action was filed on March 6, 2006. Plaintiff's initial designation of experts was accomplished on September 15, 2006. Defendant's designation of experts was made on November 3, 2006. Nationwide's last payment was made some seventeen months into this litigation on August 6, 2007. Since this final payment is evidence that Nationwide's investigation was still open, I believe all of the evidence the plaintiffs are challenging in this motion may be admissible.

While I may consider this issue again in connection with the issue of punitive damages, if and when the issue of liability is resolved in favor of the plaintiffs, the exclusion of the evidence plaintiffs propose through this motion *in limine* is not appropriate in the liability phase of this trial. The timing of the steps in Nationwide's claim evaluation process and the receipt and consideration of information, including expert reports, meteorological information, and engineering calculations, during the entire claim evaluation process are relevant and are fair grounds for cross-examination on the issue of actual damages (in phase one) and perhaps on the issue of good faith (in phase two). Nationwide's duty to fairly evaluate the merits of the plaintiffs' claim is on-going. I can see no justification for excluding any of the evidence covered by this motion during the liability phase of this trial.

This motion [167] is **DENIED**.

**DECIDED** this 24th day of June, 2008.

                                                                         s/ L. T. Senter, Jr.
                                                                         L. T. SENTER, JR.
                                                                         SENIOR JUDGE